IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN I., MARK I. AND JILL I. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CENTRAL BUCKS SCHOOL DISTRICT | : | NO. 08-571 |

### MEMORANDUM

**Padova, J.**                                                                                                                                               **February 18, 2009**

This action has been brought by Steven I. ("Steven"), a student with learning disabilities, and his parents, Mark I. and Jill I., against the Central Bucks School District (the "School District"). Plaintiffs seek compensatory education from the 1997-98 school year through the present due to the School District's failure to provide Steven with a free appropriate public education ("FAPE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.[1] Plaintiffs have appealed the decision of the Pennsylvania Special Education Appeals Review Panel (the "Appeals Review Panel"), affirming the decision of the Special Education Hearing Officer (the "Hearing Officer"), who denied their claim, finding that the two-year statute of limitations in the Individuals with Disabilities Education Improvement Act (the "IDEIA"), 20 U.S.C. § 1415(f)(3)(C), limited their claim to the time period beginning on May 1, 2005, and that the School District had lawfully graduated Steven on June 17, 2005. Before the Court are the parties' cross-motions for summary judgment with respect to the following issues: (1) whether the two-year statute of limitations applies to Plaintiffs' claim for compensatory education, and (2) whether Steven was lawfully graduated from high school on June 17, 2005. For the reasons that follow, both Motions are granted in part and

---

[1] The parties have settled their dispute with respect to the time period between May 1, 2005 and Steven's high school graduation on June 17, 2005 and Plaintiffs do not seek an award of compensatory education for that time period. (Compl. ¶ 1 n.2.)

denied in part.

**I.     BACKGROUND**

Steven was a student in the School District from the beginning of the 1992-93 school year through his graduation on June 17, 2005. (Parents Hr'g Exs. 1, 22.) The School District identified Steven as a student eligible to obtain special education services in 1993, when he was in kindergarten. (Sch. Dist. Hr'g Exs. 69-71.) It therefore gave Steven learning support in study skills, English and reading. (Parents Hr'g Exs. 9, 13, 14, 16; Sch. Dist. Hr'g Exs. 2, 67-71, 79.) Steven graduated from high school based upon course credits and a review of a portfolio of his work. (Sch. Dist. Hr'g Exs. 1-3.)

On May 1, 2007, Mark I. and Jill I. initiated a due process hearing seeking compensatory education for Steven from the 1997-98 school year through the present. (Hr'g Officer Ex. 14 at 1.) In their request for a due process hearing, Steven's parents claimed that Steven had not received FAPE since at least the 1997-98 school year because he: 1) was never comprehensively evaluated by the School District; 2) demonstrated very minimal to no progress in basic reading, reading comprehension, math reasoning and numerical operations between 1997 and 2004; 3) regressed in spelling, written expression, and oral expression between 1997 and 2004; 4) was not evaluated in reading fluency; 5) showed a significant decrease in verbal abilities; 6) was never assessed for visual impairment; and (7) did not make meaningful educational progress under his Individual Education Programs ("IEPs").[2] (Hr'g Officer Ex. 14 at 3-5.) Steven's parents also claimed that Steven did not

---

[2] "[A]n Individual Education Program (IEP) is the primary vehicle for providing students with the required free and appropriate education." S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 264 (3d Cir. 2003) (citing Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir. 1995)). The United States Court of Appeals for the Third Circuit has explained that an "IEP is a written statement developed for each child that must include several elements[,]" including the student's "current level

properly graduate from Central Bucks East High School in 2005 because he did not complete all of the requirements for graduation. (Id. at 2.)

Steven's due process hearing took place on June 22, July 25, and July 26, 2007, and the Hearing Officer took testimony and other evidence relating to the propriety of Steven's graduation from high school and the issue of whether Steven's claims were barred by the two-year statute of limitations. (Hr'g Officer Decision at 3, ¶ 5.) Five witnesses testified: (1) the guidance counselor who monitored Steven's credits for graduation; (2) Steven's twelfth grade teacher; (3) Steven's learning support teacher and IEP case manager for tenth through twelfth grades; (4) Jill I.; and (5) Mary Renner, the School District's Supervisor of Special Education. (Id. at 4, ¶ 7; N.T. at 483.) On September 25, 2007, the Hearing Officer issued his decision, concluding that the IDEIA's two-year statute of limitations applied to Steven's claims and that Steven was lawfully graduated from high school on June 17, 2005. (Hr'g Officer Decision at 7, ¶ 44 and 8, ¶¶ 1-10.)

Steven's parents filed exceptions to the Hearing Officer's decision. The Appeals Review Panel affirmed the Hearing Officer's decision, in its entirety, on November 7, 2007. (Appeals Review Panel Decision at 13.) Steven's parents argued to the Appeals Review Panel that Steven was unlawfully graduated because excessive absences prevented him from completing the required hours

---

of performance, and how her disability affects her performance." Id. (citing 20 U.S.C. § 1414(d)(1)(A)). The IEP must also "set measurable annual goals relating both to progress in the general curriculum and additional educational needs arising from her disability." Id. (citing 20 U.S.C. § 1414(d)(1)(A)(ii)). In addition, the IEP "must detail those special education services and supplementary aids that the school will provide, explain how they will contribute toward meeting the annual goals, how they will allow the child to progress in both the general curriculum and participate in extracurricular activities, and describe how the child will interact with disabled and nondisabled children." Id. (citing 20 U.S.C. § 1414(d) (1)(A)(iii)). The IEP must also explain the assessments that will be used to measure the student's progress. Id. (citing 20 U.S.C. § 1414(d)(1)(A)(v)).

of instruction; the School District's alternative portfolio review process was an invalid assessment; and Steven had failed to earn sufficient credits from course work to graduate. (Id. at 6.) The Appeals Review Panel found that, although Steven had frequent absences, the majority of those absences were excused (id. at 6-7); Steven's parents had no basis for their argument that he was erroneously given credits for certain course work (id. at 7-8); and equitable considerations prevented a ruling in favor of his parents because:

> Neither Parents nor Student initiated any request to continue special education and regular education. Instead, they made abundantly clear that they wanted and expected Student to graduate in June 2005. Parents attended IEP meetings in which the District described in detail the plans for student's graduation. Furthermore, when the District offered the Student the option to continue, Parents refused the option. The District kept Parents and Student fully informed of the graduation requirements and the likelihood that Student would graduate in June 2005 from the beginning of the school year up to and including graduation day. Student did graduate in June 2005. District issued timely and sufficient notice and Parents did not state any objection to the graduation. In fact, all Parental behavior prior to the graduation expressed full support for the graduation.

(Id. at 8 (footnote omitted).) The Appeals Review Panel also decided that the "Hearing Officer correctly applied the statute of limitations in effect at the time the Parents filed for due process. It is the date of filing that determines the applicable statute of limitations, not the date of the alleged denial of FAPE." (Id. at 8-9.) Noting that Steven's parents filed their due process hearing request on May 1, 2007, the Appeals Panel determined that the two-year statute of limitations limited potential recovery of compensatory education to the period beginning on May 1, 2005. (Id. at 9-10.) Consequently, the Appeals Review Panel concluded that the Hearing Officer had "correctly limited the period of potential recovery to May 1, 2005 until graduation on June 17, 2005." (Id. at 10 (footnote omitted).)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. "'Where, as here, cross-motions for summary judgment have been presented, we must consider each party's motion individually. Each side bears the burden of establishing a lack of genuine issues of material fact.'" Neena S. v. Sch. Dist. of Philadelphia, Civ. A. No. 05-5404, 2008 U.S. Dist. LEXIS 102841, at *17 (E.D. Pa. Dec. 19, 2008) (quoting Reinert v. Giorgio Foods, Inc., 15 F. Supp. 2d 589, 593-94 (E.D. Pa. 1998)).

"In a civil action arising from the administrative adjudication of an IDEA dispute, the district court conducts plenary review of legal conclusions and a 'modified de novo review' of factual findings to provide them 'due weight.'" Tearance D. v. Sch. Dist. of Philadelphia, 570 F. Supp. 2d 739, 743 (E.D. Pa. 2008) (citing S.H, 336 F.3d at 270-71). In order to give "due weight" to the underlying administrative proceedings, the "[f]actual findings from the administrative proceedings are to be considered prima facie correct." S.H., 336 F.3d at 270 (citing MM v. Sch. Dist. of Greenville County, 303 F.3d 523, 531 (4th Cir. 2002)). If we differ from those factual findings, we are obligated to explain our reasoning. Id. (quoting MM, 303 F.3d at 531). Thus, "[a] federal district court reviewing the administrative fact finder in the first instance is . . . required to defer to the [hearing officer's] factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record." Id. (footnote omitted). Where, as here, "the District Court does not hear additional

evidence it must find support for any factual conclusions contrary to the [hearing officer's] in the record before it." Id. The district court must also "explain why it does not accept the [hearing officer's] findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." Id. (citing Susan N., 70 F.3d at 757).

### III.   DISCUSSION

#### A.   The Statute of Limitations

The IDEA and the regulations implementing Section 504 of the Rehabilitation Act require school districts to provide disabled children with "free appropriate education." See M.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389, 392 (3d Cir. 1996) (citing 20 U.S.C. § 1400(c)); Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999) (citing W.B. v. Matula, 67 F.3d 484, 492-93 (3d Cir. 1995)). A school district satisfies this standard when it provides a disabled student with an IEP which provides "significant learning" and confers "meaningful benefit." Ridgewood, 172 F.3d at 247 (internal quotation omitted). In M.C., the United States Court of Appeals for the Third Circuit held that a disabled child who has not received an appropriate IEP is entitled to compensatory education:

> A school district that knows or should know that a child has an inappropriate [IEP] or is not receiving more than a *de minimis* educational benefit must, of course, correct the situation. We hold that, if it fails to do so, a disabled child is entitled to compensatory education for a period equal to the period of deprivation, excluding only the time reasonably required for the school district to rectify the problem.

M.C., 81 F.3d at 391-92.

In December 2004, Congress adopted the IDEIA, which instituted a two-year statute of limitations for claims for compensatory education, to take effect on July 1, 2005. See Lawrence

Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 370 (3d Cir. 2005). The amendment states as follows:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C). Prior to the effective date of the IDEIA, there was no statute of limitations for claims for compensatory education made pursuant to the IDEA in this Circuit. See Tearance D., 570 F. Supp. 2d at 743 ("In the Third Circuit, prior to the IDEIA's amendments, the IDEA did not provide a limitations period for bringing a state-level due process complaint."); see also Amanda A. v. Coatesville Area Sch. Dist., Civ. A. No. 04-4184, 2005 U.S. Dist. LEXIS 2637, at *19 (E.D. Pa. Feb. 23, 2005) (holding, prior to the effective date of the IDEIA, that there "is no limitations period, whether equitable or legal, on a disabled child's claim for compensatory education pursuant to the IDEA").

The Appeals Review Panel explained its application of the statute of limitations in this case as follows:

> The two-year limitation on recovery of compensatory education applies from the date the parent or district knew or should have known that the child was denied FAPE. If the parents fail to file for due process within two years of the first "known" or "should have known" denial of FAPE and the denial of FAPE continues through subsequent years and IEPs, the child, through the parents, may still recover compensatory education for the last two years before the due process request was filed. Because the due process request was filed on May 1, 2007, the look back period is limited to the period beginning May 1, 2005. The Hearing Officer correctly limited the period of potential recovery to May 1, 2005 until graduation on June 17, 2005.

(Appeals Review Panel Decision at 9-10 (footnote omitted).) Plaintiffs argue that the Hearing Officer and Appeals Review Panel improperly applied the two-year statute of limitations retroactively to claims that arose before the effective date of the IDEIA. Defendant maintains that the two-year statute of limitations applies in this case because Plaintiffs did not file their request for a due process hearing until after the effective date of the IDEIA. Consequently, the issue before us is whether the two-year statute of limitations imposed by § 1415(f)(3)(C) applies retroactively to claims that accrued before the effective date of the statute when the due process hearing request was not made until after the effective date of the statute.

We utilize a two-step analysis to determine whether a statute applies retroactively. See Tearance D., 570 F. Supp. 2d at 746. "[T]he first step in determining whether a statute has an impermissible retroactive effect is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively." INS v. St. Cyr, 533 U.S. 289, 316 (2001) (citing Martin v. Hadix, 527 U.S. 343, 352 (1999)). "The standard for finding such unambiguous direction is a demanding one" that requires "'statutory language that [is] so clear that it [can] sustain only one interpretation.'" Id. (quoting Lindh v. Murphy, 521 U.S. 320, 328 n.4 (1997)). The IDEIA contains no clear language expressing Congressional intent as to retroactivity. See Tearance D., 570 F. Supp. 2d at 747; Laura P. v. Haverford Sch. Dist., Civ. A. No. 07-5395, 2008 U.S. Dist. LEXIS 96190, at *41 (E.D. Pa. Nov. 21, 2008) ("In this case, the IDEA amendment contains no clear Congressional intent of retroactivity.")

At the second step, we determine whether the application of the statute of limitations would produce "an impermissible retroactive effect." St. Cyr, 533 U.S. at 320. Consequently, we examine whether the statute of limitations "'takes away or impairs vested rights acquired under existing laws,

8

or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'" Id. at 321 (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 269 (1994)).  There was no statute of limitations applicable to claims for compensatory education in Pennsylvania prior to the IDEIA.  Plaintiffs claim that Steven was denied FAPE beginning with the 1997-98 school year, before the effective date of the IDEIA.  Consequently, applying the two-year statute of limitations to Plaintiffs' claim for compensatory education would "have the impermissible effect of impairing rights Plaintiffs possessed prior to the amendment. The new provision would attach new legal consequences to events completed before the amendment's effective date." Laura P., 2008 U.S. Dist. LEXIS 96190, at *41; see also Tearance D., 570 F. Supp. 2d at 748 (stating that applying the IDEIA to Tearance's due process claim, which accrued prior to the effective date of the IDEIA, would "attach new legal consequences to [plaintiffs' decision not to bring an earlier due process claim], resulting in an impermissible retroactive effect working a manifest injustice").  We find, accordingly, that the IDEIA's two-year statute of limitations on claims for compensatory education does not apply retroactively to bar Plaintiffs' claims which accrued prior to the effective date of that statute.[3]  Plaintiffs' Motion for Summary Judgment is, therefore, granted as to their claim that the Hearing Officer and Appeals Review Panel erred by applying the two-year statute of limitations pursuant to 20 U.S.C. § 1415(f)(3)(C) to their claims for compensatory

---

[3]But see P. P. v. West Chester Area Sch. Dist., 557 F. Supp. 2d 648, 660 (E.D. Pa. 2008) (determining that the two-year statute of limitations provided by the IDEIA applied to P.P.'s claims for compensatory education because plaintiffs' requested their due process hearing after the effective date of the IDEIA) and Evan H. v. Unionville- Chadds Ford Sch. Dist., Civ. A. No. 07-4990, 2008 U.S. Dist. LEXIS 91442, at *11  (E.D. Pa. Nov. 4, 2008) (determining that the application of the two-year statute of limitations to claims for compensatory education that accrued prior to the effective date of the IDEIA was not impermissibly retroactive).  While we understand our learned colleagues' reasoning, we find the retroactivity analysis of Tearance D. and Laura P. more persuasive.

education prior to May 1, 2005. Defendant's Motion for Summary Judgment is denied as to this issue.

      B.    <u>The Lawfulness of Steven's Graduation From High School</u>

Plaintiffs contend that the Hearing Officer and Appeals Review Panel erred by finding that Steven was lawfully graduated from high school. The School District maintains that the Hearing Officer and Appeals Review Panel correctly ruled that Steven was lawfully graduated on June 17, 2005. The Hearing Officer made the following findings of fact regarding Steven's graduation. Steven had all of the required credits for graduation in English, social studies, science, math, arts and humanities, electives, gym and technology, and he had completed the requisite ninth grade assessment and eleventh grade project. (Hr'g Officer Decision at 6, ¶ 32.) Steven received the course credits in English, science and social studies necessary for graduation with a regular high school diploma. (Id. ¶ 33.) Steven graduated, in part, based on a portfolio review process adopted by the School District pursuant to 22 Pa. Code § 4.52.[4] (Id. ¶¶ 34-35) As required by the School District, two individuals, Steven's teacher and Mary Renner, evaluated Steven's portfolio and found that his written work was satisfactory. (Id. at 6, ¶ 35 and 7, ¶ 36.) Steven had demonstrated the

---

[4]Title 22, Pennsylvania Code, Section 4.52, directs school districts to develop assessment systems to determine whether students are achieving academic standards. 22 Pa. Code § 4.52(a)(1). The assessment systems may include any of the following:
> (1) Written work by students[;] (2) Scientific experiments conducted by students[;] (3) Works of art or musical, theatrical or dance performances by students[;] (4) Other demonstrations, performances, products or projects by students related to specific academic standards[;] (5) Examinations developed by teachers to assess specific academic standards[;] (6) Nationally-available achievement tests[;] (7) Diagnostic assessments[;] (8) Evaluations of portfolios of student work related to achievement of academic standards[;] (9) Other measures as appropriate, which may include standardized tests.

22 Pa. Code § 4.52(e).

skills necessary for post-graduate life by June of 2005. (Id. at 7, ¶ 37.) The School District notified Steven and his parents that he would graduate on June 17, 2005, and his parents did not object to his graduation. (Id. at 7, ¶¶ 38-43.)

Plaintiffs argue that the Hearing Officer erred by inadequately considering whether Steven's absences from school prevented him from completing the hours of instruction required in Pennsylvania and whether he was properly awarded credits for resource room work. They maintain that Steven's excessive absences and repeated failures of courses that the School District required for graduation prevented him from completing the requisite number of course credits for graduation pursuant to 22 Pa. Code § 57.31.[5] The Appeals Review Panel rejected these arguments, noting that the majority of Steven's absences were excused. (Appeals Review Panel Decision at 6-7.) The non-testimonial extrinsic evidence on the record before us shows that 89% of Steven's absences from high school were excused and, thus, does not contradict the decision of the Appeals Review Panel.[6] (Sch. Dist. Hr'g Ex. 2.)

Plaintiffs also maintain that the School District improperly counted resource room classes towards Steven's graduation requirements because Steven failed courses that the School District requires for graduation. The Appeals Review Panel rejected this argument on the ground that it had no legal basis. (Appeals Review Panel Decision at 7-8.) The non-testimonial extrinsic evidence

---

[5]Title 22, Pennsylvania Code, Section 57.31, states that, in order to graduate, a student must complete 120 hours of instruction in the following 21 units of course credit: four credits in English, three credits in math, three credits in science, three credits in social studies, two credits in arts or humanities, one credit in health and physical education, and five credits in other courses. 22 Pa. Code § 57.31(a).

[6]All of Steven's absences during his freshman and sophomore years of high school were excused. All but four of his absences during his junior year were excused, and all but 15 and 1/2 of his absences during his senior year were excused. (Sch. Dist. Hr'g Ex. 2.)

shows that Steven received the requisite units of course credits for graduation if resource room courses are included.[7] (Sch. Dist. Hr'g Ex. 2.) Plaintiffs rely on the Central Bucks School District 2004-05 Course Selection Guide to support their argument that resource room courses could not be substituted for required core subject courses. The Course Selection Guide lists certain required English and social studies courses and the sequences in which they should be taken. (Sch. Dist. Hr'g Ex. 84 at 19-20, 35.) Steven did not pass or receive credit for all of these courses. (See Sch. Dist. Hr'g Ex. 2.) The record does not contain any evidence regarding the subject matter covered in Steven's resource room courses and does not state whether those courses cover the same material as the required English and social studies courses that Steven failed. The Hearing Officer relied on the testimony of Michele McGroggan, Steven's guidance counselor for eleventh and twelfth grades, that Steven's resources room classes count towards graduation and were appropriately counted as fulfilling Steven's English and social studies requirements. (Hr'g Officer Decision at 6, ¶ 9; N.T. at 43-50, 88.)

In determining whether the "'non-testimonial, extrinsic evidence in the record would justify'" a conclusion contrary to that reached by the hearing officer, we utilize "essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004) (quoting Carlisle Area Sch. v. Scott P., 62

---

[7]Steven's transcript shows that, including resource room courses, he received 4.5 units of course credit for English; 4 units of course credit in social studies; 3 units of course credit in science; 3 units of course credit in math; 3 units of course credit in arts and humanities; 1.66 credits in health and physical education; and 7.84 course credits in other courses. (Sch. Dist. Hr'g Ex. 2.) Steven's Credit Check and Graduation Log shows that he received 4 credits in English, 4 credits in social studies, 4.5 credits in arts and humanities, 3 credits in science, 3 credits in math, 1.5 credits in physical education, and 5.5 credits in other courses. (Sch. Dist. Hr'g Ex. 2.) While we do not understand the discrepancy, both documents show that Steven earned sufficient course credits to graduate.

F.3d 520, 529 (3d Cir. 1995) and citing Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985)). Thus, we may conclude that the non-testimonial evidence justifies a conclusion contrary to that reached by the Hearing Officer where, "after reviewing the evidence, [we are] left with a definite and firm conviction that a mistake has been committed." Id. (internal quotation omitted). We find that the Course Selection Guide's references to English and social studies courses that are required for graduation are not sufficient evidence to leave us "with a definite and firm conviction" that the Hearing Officer erred in finding that Steven had completed all of the required credits for graduation in English, social studies, science, math, arts and humanities, electives, gym and technology and that he had received the required number of course credits in English, science and social studies to graduate with a regular high school diploma. (Hr'g Officer Decision at 6, ¶¶ 32-33.)

Plaintiffs also argue that the Hearing Officer erred by ignoring their argument that the School District's local assessment of Steven failed to meet state requirements. Steven's PSSA scores were below basic in English, math and writing. (Sch. Dist. Hr'g Ex. 1.) Consequently, he was verified for graduation by the School District based upon a portfolio review. (Id.) Plaintiffs contend that the Hearing Officer erred by finding that Steven's portfolio review met state local assessment requirements. They argue that the School District did not comply with state law because it utilized only one assessment strategy.

State law provides that each school district must design an assessment system to determine whether students are achieving academic standards. 22 Pa. Code § 4.52(a)(1). Each local assessment system is to employ "a variety of assessment strategies." 22 Pa. Code § 4.52(e). Pennsylvania does not endorse any particular assessment strategy; however, the statute lists nine different strategies that may be utilized. Id. (stating that the local assessment system "shall be

designed to include a variety of assessment strategies which may include any of the following . . . ." ) Portfolio review, standardized tests, and examinations developed by teachers are included in the statute's list of possible assessment strategies. See 22 Pa. Code § 4.52(e)(5), (8), (9). The non-testimonial extrinsic evidence demonstrates that the School District utilized all three of these assessment strategies -- examinations developed by Steven's teachers, standardized tests (the PSSAs), and portfolio review -- to assess Steven's academic achievement. (Sch. Dist. Hr'g Exs. 1-3.) Steven graduated based upon both his course credits (determined by examinations developed by Steven's teachers) and his portfolio review. We find, accordingly, that the non-testimonial, extrinsic evidence in the record does not justify a conclusion contrary to that reached by the hearing officer with respect to this issue.

Plaintiffs also argue that the School District's portfolio review failed to meet the School District's own requirements. Plaintiffs contend that two people were required to evaluate Steven's portfolio and that only Steven's teacher evaluated the portfolio. They further maintain that it is possible that Steven's portfolio contained fewer proficient entries than he needed for graduation. Plaintiffs also argue that Steven's portfolio entries were not appropriately reviewed with respect to the "Reading Independently" standard. All of these arguments rely entirely on testimonial evidence. (Pls. Mem. at 31.) We are required to defer to the factual findings of the Hearing Officer unless we can "point to contrary non-testimonial extrinsic evidence on the record." S.H., 336 F.3d at 270. In this instance, we cannot.

Plaintiffs also argue that the Hearing Officer failed to address their contention that Steven was inappropriately exited from special education. The Hearing Officer found that Plaintiffs were given notice that Steven was slated to graduate and were informed that he could remain in school

instead of graduating. (Hr'g Officer Decision at 7, ¶¶ 38-39, 41.) The Hearing Officer also noted that Plaintiffs were sent a Notice of Recommended Educational Placement in June 2005 indicating that Steven was to graduate and that they did not give the School District any indication that they opposed Steven's graduation. (Id. ¶¶ 42-43) The non-testimonial evidence establishes that Plaintiffs were notified that Steven was going to graduate and that they could disapprove his graduation and the termination of his educational services. (Sch. Dist. Hr'g Ex. 5, 6, 8.) Steven's January 30, 2004 and December 1, 2004 IEPs addressed his upcoming graduation and post-high school plans. (Sch. Dist. Hr'g Exs. 12 at 15-17; 24 at 11-13.) In the spring of 2004, Plaintiffs asked that Steven be evaluated for post-secondary transition planning. (Sch. Dist. Hr'g Ex. 23 at 2.) The evaluation report was sent to Plaintiffs in the fall of 2004. (Id. at 1.) In addition, Jill I. admitted, during the Due Process Hearing, that she was told during Steven's eleventh and twelfth grade IEP meetings that she had the option of keeping Steven in the School District after the conclusion of his twelfth grade school year and chose not to select that option. (N.T. at 389-90; see also N.T. at 299-300.) We find, therefore, that the non-testimonial extrinsic evidence in the record before us does not justify a conclusion contrary to that reached by the Hearing Officer regarding whether Steven was appropriately exited from special education when he graduated from high school.

We further conclude that the non-testimonial extrinsic evidence on the record before us does not support Plaintiffs' argument that the Hearing Officer and the Appeals Review Panel erred by concluding that Steven was lawfully graduated from high school. Plaintiffs' Motion for Summary Judgment is, accordingly, denied as to the lawfulness of Steven's graduation from high school and Defendant's Motion for Summary Judgment is granted as to this issue.

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is granted as to their argument that the Hearing Officer and Appeals Review Panel incorrectly applied a two-year statute of limitations to their claim for compensatory education and denied as to their argument that the Hearing Officer and Appeals Review Panel erred by finding that the School District properly graduated Steven in June 2005.  Defendant's Motion for Summary Judgment is denied as to its argument that the Hearing Officer and Appeals Review Panel properly applied a two-year statute of limitations to Plaintiffs' claim for compensatory education and granted as to its argument that the Hearing Officer and Appeals Review Panel correctly ruled that Steven was lawfully graduated by the School District.  This action is, accordingly, remanded to the Appeals Review Panel to determine Steven's entitlement to compensatory education from the 1997-98 school year through May 1, 2005.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN I., MARK I. AND JILL I. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CENTRAL BUCKS SCHOOL DISTRICT | : | NO. 08-571 |

**O R D E R**

      **AND NOW,** this 18th day of February, 2009, upon consideration of Defendant's Motion for Summary Judgment (Docket No. 12), Plaintiffs' Motion for Summary Judgment (Docket No. 13), and all documents filed with respect thereto, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Summary Judgment is **DENIED** insofar as it asks us to find that the Special Education Hearing Officer ("Hearing Officer") and Special Education Due Process Appeals Review Panel (the "Appeals Review Panel") properly applied a two-year statute of limitations in this case and **GRANTED** insofar as it asks us to find that the Hearing Officer and Appeals Review Panel properly found that Steven I. was lawfully graduated from high school.

2. Plaintiffs' Motion is **GRANTED** insofar as it asks us to find that the Hearing Officer and Appeals Review Panel improperly applied a two-year statute of limitations in this case and **DENIED** insofar as it asks us to find that the Hearing Officer and Appeals Review Panel improperly found that Steven I. was lawfully graduated from high school.

3. **JUDGMENT** is entered in favor of Plaintiffs, reversing the decision of the Appeals Review Panel insofar as it found that Plaintiffs' claims for compensatory education accruing prior to May 1, 2005 were barred by a two-year statute of limitations.

4.  **JUDGMENT** is entered in favor of Defendant, affirming the decision of the Appeals Review Panel insofar as it found that Steven I. was lawfully graduated from high school.

3.  This matter is **REMANDED** to the Commonwealth of Pennsylvania Special Education Due Process Appeals Review Panel to determine, consistent with this Memorandum and Order: 1) the entitlement, if any, of Steven I. to compensatory education from the 1997-98 school year until May 1, 2005, and 2) the nature and amount of any such compensatory education award.

3.  The Clerk of Court shall **CLOSE** this case statistically.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.